WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Gellos, et al., | No. CV-24-01529-PHX-GMS |
| Plaintiffs, | *AMENDED ORDER |
| v. | (*Amended at p. 7, line 17 to change Plaintiffs to Defendants) |
| City of Phoenix, et al., | |
| Defendants. | |

Before the Court is Defendant City of Phoenix, Officer Christopher Turiano, and Officer William Gates' ("Phoenix Defendants") Motion to Dismiss (Doc. 18). On January 17, 2025, the Court heard oral argument on the Motion. Just prior to oral argument, the Parties agreed to the dismissal of: (1) Counts I and IV as to the Officers only, (2) Count III in its entirety with prejudice and (3) Count V in its entirety without prejudice. At issue at oral argument then, were Counts VI and VII, Plaintiff's § 1983 claims, and the City's request that in light of the dismissal of the officers on Counts I and IV, that the City also be dismissed on those counts. The Court rules as follow on those remaining issues.

## BACKGROUND

Pursuant to the facts plead in the Complaint (Doc. 1 at 5-19), which the Court accepts as true, Plaintiff Susan Gellos and her daughter, Plaintiff Taryn Foster, attended a concert on March 9, 2023 at the Footprint Center. (*Id.* at 8). Before finding their seats, Gellos verbally quarreled with another patron, who then told Footprint security that Gellos and Foster were fighting with the patrons. (*Id.*). Footprint security subsequently

approached Gellos and Foster and indicated that security had reason to believe Gellos and Foster were intoxicated. After receiving assurance from Gellos and Foster, Footprint security escorted them to their seats. (*Id.*). Upon Foster's request, Footprint staff escorted Foster in a wheelchair. (*Id.* at 8-9).

Twenty minutes later while buying drinks, Gellos had a second interaction with the same patron from earlier. (*Id.* at 9). Fifteen minutes after the second interaction, a Footprint employee asked Gellos to leave. (*Id.*). Gellos and Foster remained calm but protested. (*Id.*). Footprint security then "grabbed Gellos by all four limbs and forcefully and indelicately carried her out of the seating areas of the arena." (*Id.*). Richard Brunton, a member of Footprint security, violently swung Gellos and wrenched her arm, at which point Gellos began to feel extreme pain. (*Id.*).

Shortly thereafter, the security detail met with Defendant Phoenix Police Officer Turiano and Defendant Phoenix Police Officer Gates. (*Id.*). Officer Turiano placed Gellos into an armlock on her right arm, at which point Gellos attempted to position her body to relieve the pain. (*Id.*). Officer Turiano responded with more force, worsening Gellos's injuries. (*Id.* at 9-10). Officer Gates was not involved in the handling of Gellos and did not intervene. (*Id.* at 10). Gellos did not resist, and any physical contact with the Officers was unintentional and due to her pain. (*Id.*). Foster witnessed the altercation and was so shocked that she required a wheelchair and could no longer stand or walk. (*Id.*).

Plaintiffs Gellos and Foster filed a lawsuit against Defendants City of Phoenix, Officer Gates, and Officer Turiano. Plaintiffs raise two federal claims: excessive force in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 and duty and failure to intervene. (*Id.* at 14). The remaining state law claims against the City are gross negligence (Count I) and negligent infliction of emotional distress (Count IV). As detailed in this Order, the Defendants' Motion to Dismiss the federal claim is granted. The Court exercises supplemental jurisdiction over the remaining state law claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012) (A "district court retains discretion over whether to exercise supplemental jurisdiction over state law claims even after all federal claims are

dismissed.").

## LEGAL STANDARD

Defendants may prevail on their motions to dismiss if Plaintiff "fail[ed] to state a claim upon which relief can be granted." *Whitaker v. Tesla Motors, Inc*., 985 F.3d 1173, 1175 (9th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). Plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Even if the complaint has a cognizable legal claim, the factual content must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th Cir. 1984) ("A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.").

## DISCUSSION

### I. Federal Claims

#### a. Officers Turiano and Gate Are Entitled to Qualified Immunity

##### i. Qualified Immunity

Qualified immunity is "an immunity from suit rather than a mere defense to liability" and should be resolved "at the earliest possible stage in litigation." *Johnson v. Cnty. of L.A.*, 340 F.3d 787, 791 (2003) (citations omitted). "Qualified immunity shields government officials under § 1983 unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)). The unlawfulness of conduct is clearly established if, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (internal quotations omitted). Courts do not require a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

A district court may dismiss a complaint for failure to state a claim based on qualified immunity if "the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). District courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### ii. Clearly Established Law
#### 1. Officer Turiano (Count VI)

In the context of an excessive force case, as here, "qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force." *Brooks v. Clark County*, 828 F.3d 910, 919 (9th Cir. 2016) (internal quotations omitted). Plaintiffs must allege more than the "general proposition that the Fourth Amendment prohibits officers from using an amount of force that is objectively unreasonable." *Id.* Instead, "the dispositive question is whether the violative nature of the officer's particular conduct is clearly established." *Id.* (cleaned up).

Plaintiffs contend that the Officer Turiano used excessive force, considering Gellos was unarmed, did not resist arrest, and is a "small senior citizen woman . . . dwarfed by the officers." (Doc. 1 at 10). However, accepting all of Plaintiffs' alleged facts as true, Plaintiffs fail to support the claim that Officer Turiano's conduct "violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *See Keates*, 883 F.3d at 1235. That is, Plaintiffs do not sufficiently allege that "every reasonable official would understand that what [Officer Turiano did] is unlawful" under the Fourth Amendment. *See Wesby*, 583 U.S. at 63; *see*

*also Brooks*, 828 F.3d at 920 ("[The court] must ask the following question: assuming the allegations [plaintiff] has made are true, was it 'beyond debate,' at the time [defendant] seized him, that the amount of force [defendant] employed violated the Constitution?").

Plaintiffs' Complaint states that, after a member of the Footprint security detail allegedly broke Gellos's arm and continued to lock Gellos's arm behind her, the detail met with Officer Turiano, who "then put Gellos into an armlock on her right arm." (Doc. 1 at 9). Gellos attempted to reposition her body to lessen the pain, at which point Officer Turiano allegedly responded with "even more force" and worsened Gellos's injuries. (*Id.* at 9-10). Even accepting these facts as true, Gellos fails to provide sufficient facts to demonstrate that it is "beyond debate" that the amount of force Officer Turiano employed violated the Constitution. *See Brooks*, 828 F.3d at 920. Footprint security had already confronted Gellos twice because of another patron's reports about her conduct. Moreover, Gellos protested after being asked to leave. And when Officer Turiano became involved in the situation, Gellos had already been forcefully removed from her seat. Further, while Officer Turiano escorted Gellos out, she attempted to reposition her body. Although Gellos alleges that she repositioned her body for the sole purpose of alleviating pain, Gellos fails to demonstrate that Officer Turiano's decision to respond with more force was in violation of "clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *See Keates*, 883 F.3d at 1235; *see also Tatum v. City and Cnty. of S.F.*, 441 F.3d 1090, 1097 ("Even accepting Tatum's contention that Fullard sought to escape [Officer] Smith's grasp to shift into a less painful position, Fullard still resisted arrest, which justified Smith's continued application of the control hold."). As such, Plaintiffs fail to carry their burden "of showing that the rights allegedly violated were clearly established." *Vos*, 892 F.3d at 1035. Accordingly, Officer Turiano is entitled to qualified immunity.

### 2. Officer Gates (Count VII)

Plaintiffs made no allegations that Officer Gates contacted Gellos. Instead, Plaintiffs claim that "Gates failed to intervene to stop the recklessly indifferent actions of

a citizen and fellow officer." (Doc. 1 at 10). Indeed, "officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen, but only when they have a 'realistic opportunity to intercede.'" *Penaloza v. City of Rialto*, 836 Fed.Appx. 547, 549 (9th Cir. 2020). However, Ninth Circuit precedent "does not clearly establish when an officer has a 'realistic opportunity to intercede.'" *Id*. And Plaintiffs have not met their burden of identifying cases that would indicate that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he [did was] unlawful." See *Wesby*, 583 U.S. at 63; *see also Rock v. Cummings*, No. cv-20-01837, 2023 WL 4315222, at *25 (D. Ariz. July 3, 2023) ("Alternatively, even putting *Penaloza* to the side, Plaintiff has not . . . met his burden of identifying a factually analogous case that would have imparted notice to the remaining Defendants that their purported failure to intervene was unconstitutional."). As such, even if Officer Turiano had violated Gellos's constitutional rights, Plaintiffs have not sufficiently alleged that Officer Gates' decision not to intervene violated "clearly established constitutional rights of which a reasonable officer would be aware." See *Keates*, 883 F.3d at 1235. As such, Officer Gates is entitled to qualified immunity.

### 3. City of Phoenix

At oral argument, Plaintiffs stated that, to the extent the Complaint alleges federal Counts VI and VII against the City of Phoenix, it is a mistake. As such, Counts VI and VII are dismissed in their entirety with leave to amend.

## II. State Law Claims

### i. Respondeat Superior

During oral argument, Defendants argued that Plaintiffs failed to allege facts to support its Count I and Count IV *respondeat superior* claims as to the City of Phoenix. "[U]nder the doctrine of *respondeat superior*, an employer is vicariously liable for the negligent work-related actions of its employees." *Roaf v. Stephen S. Rebuck Consulting, LLC*, 550 P.3d 173, 177 (Ariz. 2024) (internal quotations omitted). However, the employer is responsible "only if the employee is acting within the scope of employment when the

accident occurs." *Engler v. Gulf Interstate Engineering, Inc.*, 280 P.3d 599, 601 (Ariz. 2012) (internal quotations omitted). Here, Plaintiffs sufficiently allege that Officers Turiano and Gates were employed by the City of Phoenix and, at the time of the incident, "were acting within the course and scope of their employment or contract with the City or entities privately contracted with the City." (Doc. 1 at 7-8).

### ii. Punitive Damages

Defendants argue punitive damages against the City of Phoenix are prohibited. (Doc. 18 at 2-3). However, the Complaint does not indicate Plaintiffs seek punitive damages as to the remaining state law claims: Counts I and IV. To the extent that that the request for punitive and exemplary damages in the Complaint's "Prayer for Relief" relate to the state law claims, punitive damages are not available. (Doc. 1 at 17); s*ee* A.R.S. § 12-820.04 ("Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."); *see also Spears v. Arizona Board of Regents*, 372 F.Supp.3d 893, 925 (D. Ariz. 2019) ("[P]unitive damages arising under state law claims are not recoverable against public employees acting within the scope of their public responsibilities.").

Because Defendants do not otherwise assert lack of plausibility or raise any additional objections to Plaintiffs' remaining state law claims, the Motion to Dismiss Counts I and IV, as to the City of Phoenix, are denied.

Accordingly,

**IT IS ORDERED** Phoenix Defendants' Motion to Dismiss (Doc. 18) as to Count VI and Count VII is **granted** with leave to amend within thirty days of the date of this order. If Plaintiffs fail to file an amended complaint within thirty days of this order, the Clerk is directed to terminate this action as to Count VI and VII.

**IT IS FURTHER ORDERED** Phoenix Defendants' Motion to Dismiss as to Count III is **granted** as to the City of Phoenix, Officer Gates, and Officer Turiano with prejudice.

**IT IS FURTHER ORDERED** Phoenix Defendants' Motion to Dismiss as to Count V is **granted** as to the City of Phoenix, Officer Gates, and Officer Turiano without

1  prejudice.

2  **IT IS FURTHER ORDERED** Phoenix Defendant's Motion to Dismiss as to Count I and Count IV, as to Officer Gates and Officer Turiano, is **granted** with prejudice.

4  **IT IS FURTHER ORDERED** Phoenix Defendants' Motion to Dismiss as to Count I and Count IV, as to the City of Phoenix, is **denied**.

6  Dated this 31st day of January, 2025.

_G. Murray Snow_
G. Murray Snow
Senior United States District Judge