Office of the Phoenix City Attorney
Julie M. Kriegh, City Attorney, No. 021175
Karen Stillwell, Assistant Chief Counsel, No. 022711
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov
*Attorney for Defendants City of Phoenix,*
*Officer Christopher Turiano, and*
*Officer William Gates*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Gellos, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> City of Phoenix, et al., <br><br> Defendants. | No. CV-24-01529-PHX-GMS <br><br> **DEFENDANTS CITY OF PHOENIX, TURIANO AND GATES' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendants Officer Christopher Turiano and Officer William Gates ("Officer Defendants"), move to dismiss the claims brought against them in Plaintiffs' First Amended Complaint (Doc. 29), on the basis that Plaintiffs have not cured the deficiencies set forth in the Court's Order ruling on the Phoenix Defendants' Motion to Dismiss (Doc. 28) and that Officer Defendants are entitled to qualified immunity for Plaintiffs' Claims against them in Counts V and VI of Plaintiffs' First Amended Complaint.

Pursuant to Rule 12(b)(6), Defendant City of Phoenix (the "City") moves to dismiss Counts I and IV against it. In addition, pursuant to A.R.S. § 12-820.04,

Defendant City of Phoenix (the "City") moves to dismiss Plaintiffs' claim for punitive damages against it.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2024, Plaintiffs filed the underlying Complaint in Maricopa County Superior Court. After being served with the Complaint, the City and Officers Defendants timely and properly removed this matter to the District Court. (Doc. 1). Following briefing on these Defendants' Motion to Dismiss and oral argument (Docs. 18, 21, 22, 26), this Court dismissed all of the claims against the Officer Defendants on the basis that, based on the allegations in Plaintiffs' Complaint, the Officer Defendants were entitled to qualified immunity. (Doc. 28, pp. 3-6). The Court also ruled that Plaintiffs could not recover punitive damages against the City on the only claims remaining against it, which were claims under Arizona state law. (Doc. 28, p. 7). Plaintiffs filed an Amended Complaint adding some allegations. (Doc. 29). However, as set forth in detail below, those allegations are not sufficient to overcome the qualified immunity that should be afforded to the Officer Defendants for Plaintiffs' claims in Counts V and VI and Plaintiffs continued to assert a claim for punitive damages against the City.

In their Amended Complaint, Plaintiffs allege that on March 9, 2023, they attended a Jimmy Buffett concert at the Footprint Center located in Phoenix, Arizona. (Doc. 29, ¶ 19). After an apparent altercation or disagreement with another patron, Plaintiffs were approached by security guards and asked Plaintiff Gellos to leave. (Doc. 29, ¶¶ 20-30). Plaintiffs claim they were "calm," but protested leaving and assert that Defendant Brunton "began violently swinging" Gellos' arms, leading her to believe her arm was broken. (Doc. 29, ¶¶ 32-37). Plaintiffs then assert that Defendant Officer

Turiano used reckless force, worsening the injury to Gellos' arm and causing Foster to be so "shocked," she needed a wheelchair. (Doc. 29, ¶¶ 40-53, 71-74). The only allegations that Plaintiffs add in their Amended Complaint regarding Officer Turiano are that he knew Plaintiff Gellos' arm was injured and, instead of "backing off," he purportedly disregarded that knowledge. (Doc. 29, ¶¶ 40-53). The only allegations Plaintiffs add regarding Defendant Gates are that he watched Officer Turiano "manipulate" Plaintiff's arm and he could have told Officer Turiano the force was "unnecessary." (Doc. 29, ¶¶ 55-60).

In their Amended Complaint, Plaintiffs reassert a claim against Officer Turiano under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment (Count V). They also reassert a claim against Officer Gates for "failure to intervene." (Count VI). However, their added allegations fail to overcome the Officer Defendants' qualified immunity. Finally, despite the Court's ruling that Plaintiffs cannot recover punitive damages against the City on their state law claims pursuant to A.R.S. § 12-820.04 (Doc. 28, p. 7), in the Prayer for Relief of their Amended Complaint, Plaintiffs are seeking an award of punitive damages against all "Defendants." (Doc. 29, p. 13).

II.   **LEGAL ARGUMENT**

   A.   **Standards for Motions to Dismiss and Qualified Immunity.**

Under federal law, to state a claim upon which relief can be granted, a complaint must contain sufficient factual allegations to support the claims asserted and not just "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2000). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, *quoting Bell*

1  *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of 'further factual enhancement.'" *Id*. (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. "As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir. 1996). Causes of action that fail to state a claim upon which relief can be granted are subject to dismissal under Fed. R. Civ. P. 12(b).

The United States Supreme Court has held that "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (internal quotation marks omitted). A right is clearly established when it is "sufficiently clear that **every** reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis added and internal quotation marks omitted). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." *Rico v, Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020), *quoting Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The plaintiff bears the burden of proof to show that a right was clearly established. *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021). Thus, unless Plaintiffs can show that Officers Turiano and Gates violated clearly established law under these specific circumstances, then qualified immunity applies.

Although "[the United States Supreme] Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have

4

placed the statutory or constitutional question **beyond debate**.'" *White*, 580 U. S. at 79 (emphasis added and internal quotation marks omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted). In analyzing whether rights are clearly established, the Court must look to then-existing "cases of controlling authority" or, absent such cases, to a "robust consensus" of persuasive authorities. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015); *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021). The court must consider whether "the violative nature of [the defendant's] **particular** conduct is clearly established . . . in light of the **specific context** of the case.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020), *quoting Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016)). The United States Supreme Court has insinuated that constitutional rights can only be clearly established with on-point Supreme Court precedent and that controlling Circuit precedent is not sufficient to demonstrate clearly established law. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-8 (2021). Plaintiffs bear the burden of demonstrating that a right was clearly established prior to the claimed unlawful conduct by the officer. *See McCrae v. City of Salem*, 2023 WL 2447438, at *5 (D. Or. Mar. 10, 2023). Therefore, to demonstrate the right Plaintiffs claim was violated in this case was clearly established, Plaintiffs must cite on-point Supreme Court precedent, or at a minimum, a "robust consensus" of controlling Circuit precedent, which they cannot do.

. . .

. . .

. . .

B.  **Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted and, Even If They Had, Officers Turiano and Gates Would Be Entitled to Qualified Immunity.**

1.  **There Are No Facts Alleged to Support a Claim in Counts V and VI by Plaintiff Foster that Her Constitutional Rights were Violated.**

Although the Officer Defendants raised this issue in briefing and oral argument on its prior Motion to Dismiss (Docs. 18, 22), the Court did not address it specifically in its Order (Doc. 28), presumably because the Court dismissed Counts V and VI of Plaintiffs' Complaint and held that both Officer Defendants were entitled to qualified immunity. However, in Plaintiffs' Amended Complaint, Plaintiffs still fail to set forth factual allegations that would constitute a violation of Plaintiff Foster's constitutional rights. Indeed, Plaintiff Foster is not even mentioned in Counts V and VI of Plaintiffs' Amended Complaint. Accordingly, to the extent Count V or VI of Plaintiffs' Amended Complaint applies to Plaintiff Foster, they fail to state claims for a violation of Plaintiff Foster's constitutional rights and should be dismissed as to Plaintiff Foster.

2.  **Count V – Fourth Amendment Excessive Force Claim Against Plaintiff Gellos**

The Court ruled as follows regarding this claim in ruling on the Officer Defendants' prior Motion to Dismiss:

> In the context of an excessive force case, as here, "qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force." *Brooks v. Clark County*, 828 F.3d 910, 919 (9th Cir. 2016) (internal quotations omitted). Plaintiffs must allege more than the "general proposition that the Fourth Amendment prohibits officers from using an amount of force that is objectively unreasonable." *Id.* Instead, "the dispositive question is whether the violative nature of the officer's particular conduct is clearly established." *Id.* (cleaned up).

OFFICE OF THE CITY ATTORNEY
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

Plaintiffs contend that the Officer Turiano used excessive force, considering Gellos was unarmed, did not resist arrest, and is a "small senior citizen woman . . . dwarfed by the officers." (Doc. 1 at 10). However, accepting all of Plaintiffs' alleged facts as true, Plaintiffs fail to support the claim that Officer Turiano's conduct "violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *See Keates*, 883 F.3d at 1235. That is, Plaintiffs do not sufficiently allege that "every reasonable official would understand that what [Officer Turiano did] is unlawful" under the Fourth Amendment. *See Wesby*, 583 U.S. at 63; *see also Brooks,* 828 F.3d at 920 ("[The court] must ask the following question: assuming the allegations [plaintiff] has made are true, was it 'beyond debate,' at the time [defendant] seized him, that the amount of force [defendant] employed violated the Constitution?").

Plaintiffs' Complaint states that, after a member of the Footprint security detail allegedly broke Gellos's arm and continued to lock Gellos's arm behind her, the detail met with Officer Turiano, who "then put Gellos into an armlock on her right arm." (Doc. 1 at 9). Gellos attempted to reposition her body to lessen the pain, at which point Officer Turiano allegedly responded with "even more force" and worsened Gellos's injuries. (Id. at 9-10). Even accepting these facts as true, Gellos fails to provide sufficient facts to demonstrate that it is "beyond debate" that the amount of force Officer Turiano employed violated the Constitution. *See Brooks,* 828 F.3d at 920. Footprint security had already confronted Gellos twice because of another patron's reports about her conduct. Moreover, Gellos protested after being asked to leave. And **when Officer Turiano became involved in the situation, Gellos had already been forcefully removed from her seat. Further, while Officer Turiano escorted Gellos out, she attempted to reposition her body. Although Gellos alleges that she repositioned her body for the sole purpose of alleviating pain, Gellos fails to demonstrate that Officer Turiano's decision to respond with more force was in violation of "clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case."** *See Keates,* 883 F.3d at 1235; *see also Tatum v. City and Cnty. of S.F.*, 441 F.3d 1090, 1097 ("Even accepting Tatum's contention that Fullard sought to escape [Officer] Smith's grasp to shift into a less painful position, Fullard still resisted arrest, which justified Smith's continued application of the control hold."). As such, Plaintiffs fail to carry their burden "of showing that the rights allegedly violated were clearly

7

established." *Vos,* 892 F.3d at 1035. Accordingly, Officer Turiano is entitled to qualified immunity.

(Doc. 28, pp. 4-5, emphasis added). In their Amended Complaint, Plaintiffs have only added that instead of "backing off and allowing Gellos to position her body," Officer Turiano put Plaintiff Gellos' arm into an armlock and the officers were hurting her, despite her "screaming in pain." (Doc. 29, ¶¶ 40-53, 115-119). Some of Plaintiffs' other added allegations in their Amended Complaint are mere legal conclusions not supported by the facts and not rising to a violation of a clearly established constitutional right. These include the statements that "any force at that point was unnecessary as Gellos was not resisting" and "Turiano . . . cause[d] even more pain through force that was clearly unnecessary." (Doc. 29, ¶¶ 45, 53). These added allegations do not demonstrate that Officer Turiano violated Plaintiff Gellos' clearly established constitutional rights.

The Ninth Circuit has held that use of an arm lock to control a suspect is objectively reasonable under the circumstances, even when the criminal conduct underlying the detention or arrest of an individual is not severe, if the individual has shown to pose a possible threat and even when the individual contends that he or she only sought to escape the officer's grasp to shift into a less painful position. *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1096–97 (9th Cir. 2006). In reaching that conclusion, the *Tatum* court stated, "we have held more aggressive police conduct than [Officer] Smith's objectively reasonable, even where the conduct resulted in serious physical injury." *Id.*, citing *Johnson v. County of Los Angeles,* 340 F.3d 787, 793 (9th Cir. 2003) (concluding that hard pulling and twisting to remove a suspect from a crashed getaway car was objectively reasonable even though Johnson asserted that the officer's conduct rendered him paraplegic); *Eberle v. City of Anaheim,* 901 F.2d 814, 819–20 (9th

8

Cir.1990) (upholding a jury's verdict that a police officer's use of a finger hold to control a belligerent football fan was objectively reasonable). The court concluded that the officer did not apply more force than necessary to restrain the plaintiff to gain control of him and that the officer's use of a control hold was objectively reasonable. *Id.* Plaintiffs' additional claims in their Amended Complaint that Plaintiff Gellos complained of pain and told the officers her arm hurt so that they "knew" she was in pain does not overcome the facts that she was being removed from the venue by Footprint Center security and was trying to get her arm away from Officer Turiano. These new alleged facts do not overcome Plaintiffs' burden to show that Officer Turiano violated Plaintiff Gellos' clearly established constitutional rights. Therefore, he is entitled to qualified immunity on Plaintiffs' only claim against him in Count V of the Amended Complaint and he should be dismissed as a Defendant.

### 3. Count VI – Officer Gates' Failure to Intervene in Alleged Violation of Plaintiff Gellos' Constitutional Rights

In ruling on the Officer Defendants' prior Motion to Dismiss the claim that Officer Gates failed to intervene, this Court ruled as follows:

> "[O]fficers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen, but only when they have a 'realistic opportunity to intercede.'" *Penaloza v. City of Rialto*, 836 Fed.Appx. 547, 549 (9th Cir. 2020). However, Ninth Circuit precedent "does not clearly establish when an officer has a 'realistic opportunity to intercede.'" *Id*. And Plaintiffs have not met their burden of identifying cases that would indicate that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he [did was] unlawful." *See Wesby*, 583 U.S. at 63; *see also Rock v. Cummings*, No. cv-20-01837, 2023 WL 4315222, at *25 (D. Ariz. July 3, 2023) ("Alternatively, even putting *Penaloza* to the side, Plaintiff has not . . . met his burden of identifying a factually analogous case that would have imparted notice to the remaining Defendants that their purported failure to

> intervene was unconstitutional."). As such, even if Officer Turiano had violated Gellos's constitutional rights, Plaintiffs have not sufficiently alleged that Officer Gates' decision not to intervene violated "clearly established constitutional rights of which a reasonable officer would be aware." *See Keates*, 883 F.3d at 1235. As such, Officer Gates is entitled to qualified immunity.

(Doc. 28, p. 6). Plaintiffs added no facts to Count VI of their Amended Complaint and the facts they added in the factual allegation section of the Amended Complaint are not sufficient to demonstrate a violation of clearly established law. The only facts added were that: (1) Officer Gates was nearby when Officer Turiano "twist[ed] and manipulat[ed] Gellos[' arm];" (2) that he could have told Officer Turiano "that what he was doing was unnecessary, overbroad, and was the cause and creation of excessive force," which amounts to nothing more than a mere legal conclusion; and, finally, (3) Officer Gates had "plenty of time" to tell Officer Turiano that "what he was doing was unnecessary. . ." in the elevator. (Doc. 29, ¶¶ 56, 58, 59). However, again, these allegations are not sufficient to demonstrate the violation of a clearly established constitutional right.

As the Court already pointed out, "the law does not clearly establish when an officer must intervene." *Penaloza v. City of Rialto*, 836 F. App'x 547, 549–50 (9th Cir. 2020), *citing Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2020). Further, for an officer to be held liable for failure to intervene, there must have been a clearly established constitutional violation. *Cunningham*, 229 F.3d at 1289. If there was not, the claim must be dismissed. As set forth in the previous section, Officer Turiano did not violate Plaintiff Gellos' clearly established constitutional rights. However, even if he had, there are no Ninth Circuit or Supreme Court cases demonstrating that Officer Gates had a clearly established duty to intervene under the circumstances at issue here—even

10

given the "new" facts added by Plaintiffs in their Amended Complaint. Therefore, Officer Gates is entitled to qualified immunity and should be dismissed from the lawsuit.

For the reasons set forth above, Counts V and VI of Plaintiffs' Amended Complaint should be dismissed as to Officers Turiano and Gates and they should be dismissed as defendants.

### C. **Plaintiffs Fail to State a Claim Against the City in Counts I and IV of their Amended Complaint and Plaintiffs Cannot Recover Punitive Damages Against the City.**

Although the Court dismissed Counts I and IV as to the individual Officer Defendants, the Court denied dismissal of these counts "[b]ecause Defendants do not otherwise assert lack of plausibility or raise any additional objections to Plaintiffs' remaining state law claims. . . ." (Doc. 28, p. 7). In their Amended Complaint, Plaintiffs reassert Counts I and IV and, other than limiting them to "against the City" in the title of the Count, Plaintiffs do not revise the allegations set forth therein. (Doc. 29, ¶¶ 77-91). Plaintiffs' claims fail as a matter of law and the City respectfully requests that the Court dismiss Counts I and IV for the reasons set forth below.

#### 1. Count I – Gross Negligence

Plaintiffs conflate the standard for gross negligence with the standard for a constitutional violation, i.e., "using excessive force objectively unreasonable under the totality of the circumstances," (Doc. 29, ¶ 83). Moreover, Plaintiffs continuously refer to "Phoenix Defendants;" however, the Court dismissed Counts I and IV against Defendant Officers Turiano and Gates. (Doc. 28, p. 8).

To state a claim for gross negligence under Arizona law, a plaintiff must allege facts demonstrating that the defendant acted or failed to act when he or she had "reason

11

to know facts which would lead a reasonable person to realize that his or her conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App. 1991). "Gross negligence differs from ordinary negligence in quality and not degree." *Id.* Gross negligence "is flagrant and evinces a lawless and destructive spirit." *Id.*, *quoting Scott v. Scott*, 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953). Without allegations of such flagrant conduct, no reasonable jury can find gross negligence and the defendant is entitled to dismissal of the claim. *See Badia v. City of Casa Grande*, 195 Ariz. 349, 358, ¶ 33, 988 P.2d 134, 143 (App. 1999) (holding that the plaintiff's claim for gross negligence was properly dismissed because there was no evidence that the defendant officers acted or failed to act knowing that their actions "created an unreasonable risk of bodily harm" to the decedent and "a reasonable trier of fact could not find that defendants' alleged acts or omissions proximately caused [the decedent's] death").

Whether a claim for gross negligence can proceed is an issue of law that can be determined by the court. *Walls*, 170 Ariz. at 595, 826 P.2d at 1221. In *Walls*, the court held that the issue of gross negligence may be withdrawn from the jury "when no evidence is introduced that would lead a reasonable person to find gross negligence." *Id.* Plaintiffs do nothing more than complain that instead of "backing off and allowing Gellos to position her body," Officer Turiano put Gellos in an armlock in the process of detaining her. This does not amount gross negligence and Plaintiffs' gross negligence claim against the City fails as a matter of law.

Moreover, negligent use of force is not a recognized cause of action under Arizona law. Plaintiffs cannot pursue a negligence claim for the use of intentional force or even for the internal evaluation or decisions that led to the use of intentional force. *Ryan v. Napier*, 245 Ariz. 54, 60–61, ¶¶ 20-22, 425 P.3d 230, 236–37 (2018). In *Ryan*, the Arizona Supreme Court concluded "that negligence and intent are mutually exclusive grounds for liability," and held that "negligent use of intentionally inflicted force" is not a cognizable claim. *Id.*

> We also disagree with the court of appeals . . . that negligence liability can result from a law enforcement officer's 'evaluation' of whether to intentionally use force against another person. A negligence claim requires either 'an act' or a failure to 'act.' An 'act' is 'an external manifestation of the actor's will.' An actor's internal evaluation about whether to use force and the decision to do so are not 'acts' and therefore cannot, by themselves, constitute negligence.

*Id.* at ¶ 22 (citations & quotations omitted). *See also Leibel v. City of Buckeye,* 364 F. Supp. 3d 1027, 1045 (D. Ariz. 2019); *Hernandez v. Town of Gilbert*, 2019 WL 1557538 (D. Ariz. 2019); *Adame v. City of Surprise*, 2019 WL 2247703 (D. Ariz. 2019) ("Negligent use of excessive force is no longer a viable claim under Arizona law under these circumstances."). As set forth above, in their gross negligence claim, Plaintiffs specifically allege that Officer Turiano used "excessive force." Moreover, in Count V of the Amended Complaint, Plaintiffs specifically allege that Officer Turiano used "excessive force." Thus, Plaintiffs' claim for gross negligence is clearly based on excessive force and that claim is legally barred and must be dismissed. Accordingly, the City respectfully requests that the Court dismiss Count I of Plaintiffs' Amended Complaint.

. . .

OFFICE OF THE CITY ATTORNEY
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
(602) 262-6761

**2.     Count IV – Negligent Infliction of Emotional Distress**

In Count IV of Plaintiffs' Amended Complaint, Plaintiffs assert that the City should be liable for Foster's "emotional distress" caused by "Defendants' negligence and intentional, willful, and wanton actions." (Doc. 29, ¶ 103). However, not only do Plaintiffs fail to identify the "Defendants," Plaintiffs fail to demonstrate that Plaintiff Foster was in the "zone of danger" and further fail to demonstrate that Plaintiff Foster suffered a physical injury. Thus, Plaintiffs' Count IV fails as a matter of law.

In *Keck v. Jackson,* the court enumerated three factors that must be established to recover for emotional distress from witnessing harm to another: (1) "the shock or mental anguish of the plaintiff must be manifested as a physical injury;" (2) "the emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship, either by consanguinity or otherwise;" and (3) "the plaintiff/bystander must himself have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to him." 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979); *Hislop v. Salt River Project Agr. Imp. & Power Dist.*, 197 Ariz. 553, 555, 5 P.3d 267, 269 (App. 2000)**.** Moreover, as indicated by Restatement (Second) of Torts § 313(2), the plaintiff/bystander must herself have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to him. *Keck*, 122 Ariz. at 115-16, 593 P.2d at 669-70.

"Arizona courts have long held that a claim for negligent infliction of emotional distress requires a showing of bodily harm." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302, ¶ 7 (App. 1999). Absent physical impact or injury, however, mental anguish must manifest physically to be recoverable. *Keck*, 122 Ariz. at 115; *Quinn v.*

*Turner*, 155 Ariz. 225, 226 (App. 1987). Long-term physical illness or mental disturbance may also "constitute[ ] sufficient bodily harm to support a claim of negligent infliction of emotional distress." *Monaco*, 196 Ariz. at 303, ¶ 8. Restatement (Second) of Torts § 436A, cmt. c (1965) provides:

> The rule [relating to physical harm that results from emotional disturbance] applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character.

*See Monaco*, 196 Ariz. at 302, ¶ 8; *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 379 (App. 1987) (relying on the Restatement to conclude "transitory physical phenomena" such as crying, headaches, and insomnia "are not the type of bodily harm which would sustain a cause of action for emotional distress"). Plaintiffs assert that Plaintiff Foster has experienced "weight loss, nightmares, and behavioral changes," which as set forth above, do not amount physical harm sufficient for a negligent infliction of emotional distress claim. (Doc. 29, ¶ 104). No additional facts are alleged in Count IV. Accordingly, Count IV of Plaintiffs' Amended Complaint fails as a matter of law and should be dismissed.

### 3. Plaintiffs' Punitive Damages Claim Against the City

In the Prayer for Relief section of their Amended Complaint, Plaintiffs continue to seek an award of punitive damages against all "Defendants." (Doc. 29, p. 13). This is

despite the Court's prior ruling making it clear that Plaintiffs cannot recover punitive damages against the City of Phoenix on their state law claims against it pursuant to A.R.S. § 12-820.04. (Doc. 28, p. 7). The only claims remaining against the City in this case are state law claims. Therefore, the Court should dismiss Plaintiffs' claim in the Amended Complaint for punitive damages against the City.

## III.  CONCLUSION

For the foregoing reasons, Defendants City of Phoenix, Officer Turiano and Officer Gates respectfully request that Plaintiffs' Amended Complaint be dismissed against them, with prejudice and without leave to amend. Specifically, the Officer Defendants respectfully request that the Court dismiss Plaintiffs' allegations against them on the basis that they are entitled to qualified immunity. Further, the City respectfully requests that the Court dismiss Plaintiffs' remaining claims, Count I and IV, against it in its entirety, as well as Plaintiffs' claim for punitive damages against the City, with prejudice and without further leave to amend.

## IV.  CERTIFICATION PURSUANT TO LRCIV 12.1(c)

Undersigned counsel certifies to the Court that before filing this Motion, she met and conferred with Plaintiffs' counsel by e-mail regarding the bases on which her clients would be seeking to dismiss the Complaint and the parties were unable to agree that the Complaint was curable by amendment or subject to dismissal.

. . .

. . .

. . .

. . .

DATED this 12th day of March, 2025.

> Office of the Phoenix City Attorney
>
> By   *s/ Karen Stillwell*
>      Karen Stillwell
>      Assistant Chief Counsel
>      *Attorneys for Defendants City of Phoenix,*
>          *Officer Christopher Turiano, and Officer*
>          *William Gates*

### CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing was sent to the following CM/ECF registrants:

Sean A. Woods
Mills and Woods Law PLLC
5055 North 12st Street, Suite 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

By:   *s/ Jody C. Corbett*
KLS:jcc 4923-8202-7047 v.1.docx

4923-8202-7047, v. 1