Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Gellos, individually; Taryn Foster, individually,<br><br>Plaintiffs<br><br>vs.<br><br>City of Phoenix, a governmental agency; Christopher John Turiano and Jane Doe Turiano, husband and wife; William Gates and Jane Doe Gates, husband and wife; Richard Lee Brunton and Jane Doe Brunton, husband and wife; John and Jane Does 1-X; ABC Corporations I-X; XYZ Partnerships IX,<br><br>Defendants. | Case No.: CV-24-01529-PHX-GMS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF PHOENIX, TURIANO AND GATES' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable G. Murray Snow) |

Through undersigned counsel, Plaintiffs Susan Gellos ("Gellos") and Taryn Foster ("Foster") (collectively, "Plaintiffs") hereby respond in opposition to Defendants City of Phoenix, Turiano and Gates' (collectively, "City Defendants") Motion to Dismiss (the "MTD") Plaintiffs' First Amended Complaint (the "FAC"). This Response is supported by the following Memorandum of Points and Authorities.

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. LEGAL STANDARD

The legal standard for motions to dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court. "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a Motion to Dismiss, a court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not

countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

To the extent this Court decides that the MTD should be granted in part or in full, Plaintiffs respectfully request additional opportunity to address any deficiencies deemed by this Court.

## II. PLAINTIFF FOSTER IS NOT ASSERTING FEDERAL CLAIMS.

At the outset, City Defendants argue that Plaintiffs have alleged no facts to support a violation of Foster's constitutional rights. Plaintiffs do not disagree. Accordingly, they hereby clarify – to the extent, if any, that clarification is needed – that Foster is not asserting any federal claims in this action.

## III. TURIANO IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFFS' FOURTH AMENDMENT EXCESSIVE FORCE CLAIMS.

City Defendants contend that Plaintiffs cannot satisfy their burden to show that Turiano violated clearly established law in the force he used against Gellos. City Defendants are incorrect.

Importantly, a determination as to whether Defendants violated clearly established law *does not require the existence of an opinion with fundamentally similar facts* to those

in this case. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, . . . [the Supreme Court has] expressly rejected a requirement that previous cases be 'fundamentally similar.' Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."). Indeed:

> when an officer's conduct "is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, *closely analogous pre-existing case law is not required* to show that the law is clearly established."

*Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (emphasis added) (citations omitted) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001)); *see also Eng v. Cooley*, 552 F.3d 1062, 1076 (9th Cir. 2009) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." (quoting *Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007))).

Instead, to show that Defendants violated clearly established law, Plaintiffs need merely identify a "general constitutional rule already identified in the decisional law . . . [that] appl[ies] with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam) (quoting *Hope*, 536 U.S. at 741); *see also Hope*, 536 U.S. at 741 ("[T]he salient question . . . is whether the state of the law [at the time of defendants' conduct] gave [them] fair warning that their [conduct] was unconstitutional.").

Here, the "general constitutional rule" that "appl[ies] with obvious clarity" to Defendants' conduct is that a suspect has "[t]he right to be free from the application of non-trivial force [by police] for engaging in mere passive resistance . . . ." *Gravelet-Blondin v.*

*Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013). The Ninth Circuit has declared that this right "was clearly established prior to 2008." *Id.* (citing *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (noting cases dating back to 2001 have established that "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"). If use of non-trivial force against a passive resister or one who is merely failing to comply is unconstitutional, surely the use of such force against one who is not resisting at all, merely failing to *fully* comply with orders, or who is offering at most trivial resistance, is just as unlawful. Here, that is exactly what Plaintiffs have pled Turiano did. At a time when Gellos "was not resisting," he nevertheless put her into an armlock, using force so severe it caused her to scream from unbearable pain. *See* FAC ¶¶ 45-48. Though in excruciating pain, Gellos continued to not resist Turiano's force. FAC ¶ 66 ("Gellos never intended to resist anything nor did she."). Rather than resisting, she merely – and involuntarily – attempted to reposition her arm to relieve the pain, an automatic reaction that occurred as a result of the extreme pain. *See* FAC ¶¶ 49, 65-68. Again, this was an involuntary and unintentional movement caused by trauma that, if it amounted to resistance at all, it was trivial resistance. In response, Turiano then *increased* the force he was applying, ultimately leading to her arm bone snapping in half. *See* FAC ¶¶ 50, 64.

Even if Gellos' conduct amounted to non-trivial resistance, and it did not, Turiano's conduct still violated her constitutional right to be free from excessive force pursuant to the Fourth and Fourteenth Amendments. In making this determination, courts look to "the Supreme Court's guidance on the excessive use of force [set forth] in *Graham v. Connor*,

5

490 U.S. 386 (1989)." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). "[T]he [Supreme] Court has emphasized that there are no per se rules in the Fourth Amendment excessive force context; rather, . . . 'all that matters is whether [the defendant's] actions were reasonable.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)). "We apply *Graham* by first considering the nature and quality of the alleged intrusion; we then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir. 2001)). Ultimately, the "most important" *Graham* factor is whether the suspect posed an "immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.1994)).

Here, Turiano's actions were clearly unreasonable, and thus unlawful. Looking to the *Graham* factors, the nature and quality of the intrusion was extreme – he snapped Gellos' arm in half, FAC ¶ 64, and subjected her to excruciating pain for at least several minutes, *see* FAC ¶¶ 47-53, 57, 67. The severity of the "crime," if there even was a crime, was low – Gellos and Foster were ostensibly removed from the arena due to false reports that they had fought with other patrons and were publicly intoxicated. *See* FAC ¶¶ 22-24. As set forth in detail above, Gellos was not actively resisting or attempting to flee – at most, her arm involuntarily moved to adjust from, and/or avoid the, extreme pain Turiano was inflicting on it. *See* FAC ¶¶ 49-50, 65-68. Finally, as to the "most important" *Graham*

factor, nothing in the FAC alleges or implies that Gellos or Foster posed the slightest threat to the safety of the officers or others. In sum, the *Graham* factors tilt strongly and clearly toward a finding that Turiano's use of force was unreasonable, and thus unconstitutional. Though the (long-established) test for reasonableness in *Graham* may be a "general constitutional rule," it nevertheless "appl[ies] with obvious clarity" to the facts here. *See Gravelet-Blondin*, *supra*.

Plaintiffs submit that in light of the foregoing and as set forth in the FAC, that Turiano's conduct was prohibited by clearly established law, and he is not entitled to qualified immunity.

## IV. GATES IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFFS' FAILURE TO INTERVENE CLAIM.

City Defendants also argue that Plaintiffs cannot demonstrate Gates violated clearly established law in failing to intervene to protect Gellos from Turiano's excessive force. They are again wrong. As a threshold matter, Plaintiffs hereby incorporate the caselaw set forth in Section III above regarding qualified immunity, as if fully set forth herein.

Regarding failure to intervene liability, the "general constitutional rule" that "appl[ies] with obvious clarity" to Gates' conduct is that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen," and officers are liable for a breach of this duty if they had a 'realistic opportunity' to intercede. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)); *see also Koon*, 34 F.3d at 1447 n.25 ("[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person

7

who strikes the blows."). This rule was clearly established well prior to the incident. *See id.*; *Koon*, 34 F.3d at 1447 n.25.

City Defendants contend, however, that "the law does not clearly establish *when* an officer must intervene." MTD at 10:15-17 (emphasis added) (quoting *Penaloza v. City of Rialto*, No. 20-55164 (9th Cir. Dec. 7, 2020). Though City Defendants rely on *Penaloza*, that is an unpublished decision, and regardless it is inapplicable here. That case concerned an officer whose partner released a dog that severely bit a suspect. *See id.* at *4-5. The three-judge panel found that the officer was entitled to qualified immunity for failing to stop the dog during the brief *twenty-eight second* period it was biting the suspect, because, in their words, Ninth Circuit precedent "does not clearly establish *when* an officer has a 'realistic opportunity to intercede.'" *Id.* (emphasis added).

Here, in contrast to *Penaloza*, Gates' failure to intervene does not arise from a failure to respond during a very brief twenty-eight second incident. Instead, though Plaintiffs do not explicitly plead the duration of the incident, it can safely be inferred that Gates stood idly by while his partner brutally held Gellos' arm in an excruciating armlock for at least several minutes, if not more. As Plaintiffs allege, "Gates had *plenty of time to [intervene]* as they were taking an elevator ride." FAC ¶ 59 (emphasis added).

Moreover, Gates' failure to intervene was much more egregious than the defendant's in *Penaloza*, because instead of needing to assert control over an aggressive, biting animal, all he had to do was advise his partner to stop torturing Gellos – yet, he did nothing. While *Penaloza* lamented, based on a 28 second incident involving a failure to stop a biting animal, that it was not clearly established precisely when a Defendant's

obligation to intervene attaches, surely it attached in this case, where Gates had plenty of time to act and only needed to speak up. Gates is not entitled to qualified immunity.

## V. **PLAINTIFFS' CLAIMS FOR GROSS NEGLIGENCE AGAINST THE CITY ARE SUFFICIENTLY PLED.**

It is true that Plaintiffs' nomenclature of City Defendants includes Turiano and Gates. It is also true that Turiano and Gates were dismissed as to Count I and IV. However, Plaintiffs are struggling to understand City Defendants' argument that Gates and Turiano should not be discussed therein. In order to provide sufficient factual allegations regarding the City's liability under *respondeat superior*, factual allegations must be pled as to what its employees did. It would not be enough to say the "City's" conduct amounted to gross negligence. The City did not itself grab Gellos and treat her negligently. It was the actions of Turiano Gates – ignoring her screams and her pleading for Turiano not to hold her as he was doing. Plaintiffs have pled that Turiano and Gates ignored those screams and pleas, and that Turiano continued to hold her in a manner that caused severe pain and suffering. Ignoring those screams and pleas was grossly negligent.

As Defendants admit, and as Plaintiffs pled, Turiano acted, and Gates failed to act, when they had "reason to know facts which would lead a reasonable person to realize that his or her conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 595 (App. 1991); *see also* FAC ¶¶ 39-70. Turiano was on notice that Gellos was experiencing extreme pain. FAC ¶¶ 40-43, 46, 48, 53. Despite this, he ignored her. FAC ¶¶ 46-53. At any point, he could have and should have adjusted his

9

approach. Once it was clear he was causing her harm, he should have realized that continuing to act in the same manner would create an unreasonable risk of further harm. Instead, he continued holding her in a fashion that created an unreasonable risk of continued harm. *See* FAC ¶¶ 50-53. For his part, Gates stood by, watching this occur. FAC ¶¶ 56-57. At any point he could have, and should have, stepped in and ended the unreasonable risk of harm. *See* FAC ¶¶ 57-58. Instead, knowing the risks, he stood idly by. *See* FAC ¶¶ 55-60. Turiano, for his part, continued to act in a grossly negligent fashion, causing Gellos to suffer excruciating pain and contributing to her injuries and suffering.

City Defendants argue that pursuant to *Ryan v. Napier*, 245 Ariz. 54 (2018), Plaintiffs cannot pursue a gross negligence claim based on the use of intentional force. To the extent, if any, that *Napier* so holds and may apply to the conduct of Turiano, it nevertheless is completely inapplicable to that of Gates. At a bare minimum, Gates bears liability for his gross negligence. Plaintiffs do not allege that he used any intentional force upon Gellos. However, his conduct was a contributing cause of her excruciating pain and injury. Under *Napier*, a "negligence claim requires either 'an act' or a failure to 'act.'" *Ryan v. Napier*, 245 Ariz. 54, 60-61, ¶ 22 (2018). It was Gates' *failure* to act that is the basis of Plaintiffs' gross negligence claims against him.

## VI. FOSTER'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS SUFFICIENTLY PLED.

City Defendants argue that Count IV of the FAC fails to state a claim, for multiple reasons, none of which are compelling. As an initial matter, they complain that Count IV does not sufficiently identify the particular Defendants it is being asserted against. Frankly, this is more nit-picking. Plaintiffs amended this Count to clarify that it is asserted solely

against the City. FAC at 10. As to its general references to "Defendants," clearly under *respondeat superior* only the conduct of the City's employees – i.e., Turiano and Gates – are at issue. Accordingly, Plaintiffs hereby clarify – to the extent, if any, that clarification is needed – that the City's liability under Count IV arises solely from the conduct of Defendants Turiano and Gates.

City Defendants next argue that Plaintiffs fail to plead that Foster was in the "zone of danger." To recover for negligent infliction of emotional distress, "[t]he plaintiff/bystander must h[er]self have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to h[er]." *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304 (App. 1988) (quoting *Keck v. Jackson*, 122 Ariz. 114, 116 (1979)). Here, Plaintiffs have pled that Foster was in the zone of danger created by Turiano's action, and Gates' inaction, such that she was subjected to an unreasonable risk of bodily harm. Foster was right alongside Gellos as she was subjected to extreme pain and injury by Turiano while Gates did nothing. *See* FAC ¶¶ 69, 71. These were police officers, presumably with guns and tasers, and they were gratuitously and needlessly causing extreme pain to her dear mother. *See* FAC ¶¶ 47-75. Given their aggressively abusive treatment of a tiny, elderly woman in her immediate vicinity for no legitimate reason, it certainly would have been reasonable in the moment for Foster to perceive a genuine risk that they would inflict bodily harm to her as well. And she did, in fact, suffer bodily harm in that moment, as she was so shocked and distressed that she was unable to stand or walk. *See* FAC ¶¶ 72-73. Plaintiffs have sufficiently plead that Foster was in the zone of danger.

Finally, City Defendants claim that Foster did not suffer bodily harm from the incident. "Arizona courts have long held that a claim for negligent infliction of emotional distress requires a showing of bodily harm." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302, ¶ 7 (App. 1999). However, this does *not* require a physical injury. *Id.* ¶ 8 (explaining, quoting Comment c to Restatement § 436A, that "long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character"); *see also See Ball v. Prentice*, 162 Ariz. 150 (App. 1989) (holding that plaintiff was entitled to have jury decide whether nausea, *loss of sleep*, headaches, and *emotional problems* were causally connected to an automobile accident); *Quinn v. Turner*, 155 Ariz. 225 (App. 1987) (three-year-old boy's post-accident *behavioral changes* requiring treatment by psychologist for anxiety and by dentist for teeth grinding sufficient to defeat summary judgment). "In sum, the Arizona cases and Restatement § 436A make clear that . . . long-term . . . *mental disturbance*[] [may] constitute[] sufficient bodily harm to support a claim of negligent infliction of emotional distress." *Id.* at 303, ¶ 8 (emphasis added).

Here, Plaintiffs pled that Foster suffered immediate bodily harm at the scene, in that she "was so shocked that she could no longer stand nor walk," and "needed a wheelchair to continue." FAC ¶¶ 72-73. Second, they pled that Foster ultimately "suffered severe emotional distress which has *physically* manifested in *weight loss*, *nightmares*, and *behavioral changes* . . . ." FAC ¶ 104 (emphasis added). That is sufficient to satisfy the

standards set forth by *Monaco*, *Ball*, *Quinn*, and the Restatement above.  Plaintiffs have sufficiently stated a claim for negligent infliction of emotional distress.

### VII. **PLAINTIFFS DO NOT SEEK PUNITIVE DAMAGES AGAINST THE CITY.**

Finally, Plaintiffs agree with City Defendants that they may not seek punitive damages against the City for claims brought under Arizona law, and that the only remaining claims against the City are state law claims.  Accordingly, they hereby clarify – to the extent, if any, that clarification is needed – that they do not seek punitive damages against the City.

### VIII. **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny the MTD and rule that Plaintiffs' claims against City Defendants survive dismissal.

**RESPECTFULLY SUBMITTED** this 4th day of April 2025.

                                  **MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
      Robert T. Mills
      Sean A. Woods
      5055 North 12th Street, Suite 101
      Phoenix, AZ 85014
      *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Karen Johnson Stillwell
karen.stillwell@phoenix.gov
**OFFICE OF THE PHOENIX CITY ATTORNEY**
law.civil.minute.entries@phoenix.gov
duvelsa.rios@phoenix.gov
200 W Washington, Ste. 1300
Phoenix, Arizona 85003-1611
*Attorneys for Defendants City of Phoenix, Officer Christopher Turiano, and Officer William Gates*

Robert B. Zelms
rzelms@zelmserlich.com
Fatima Badreddine
fatima@zelmserlich.com
**ZELMS ERLICH LENKOV**
jrawlings@zelmserlich.com
ddrake@zelmserlich.com
5415 E High St., Ste. 425
Phoenix, Arizona 85054
*Attorneys for Defendants Richard Lee Brunton and Jane Doe Brunton*


          /s/ Ben Dangerfield