Office of the Phoenix City Attorney
Julie M. Kriegh, City Attorney, No. 021175
Karen Stillwell, Assistant Chief Counsel, No. 022711
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Telephone (602) 262-6761
law.civil.minute.entries@phoenix.gov
*Attorney for Defendants City of Phoenix, Turiano, and Gates*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Susan Gellos, et al., | No. CV-24-01529-PHX-GMS |
|---|---|
| Plaintiffs, | **DEFENDANTS CITY OF PHOENIX, TURIANO AND GATES' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| City of Phoenix, et al., | |
| Defendants. | |

Defendants City of Phoenix, Officer Christopher Turiano and Officer William Gates (collectively "Defendants"), through undersigned counsel, file their Reply in Support of their Motion to Dismiss and urge the Court to grant it.

**I.      PLAINTIFF FOSTER CONCEDES SHE IS NOT ASSERTING A FEDERAL CLAIM.**

In their Response, Plaintiff Susan Gellos and Taryn Foster ("Plaintiffs") concede that Plaintiff Foster is not asserting a federal claim against Officers Turiano and Gates in Counts V and VI of their Amended Complaint. Therefore, the Court should clarify in an order that no such claims are being asserted by Plaintiff Foster.

**II.     PLAINTIFF GELLOS' FEDERAL CLAIMS SHOULD BE DISMISSED.**

   **A.      Plaintiff Gellos Fails to State a Fourth Amendment Excessive Force Claim Against Officer Turiano in Count V.**

In their Response, Plaintiffs argue that they have alleged sufficient facts to state a claim that Officer Turiano used excessive force against Plaintiff Gellos because under

the factors set forth in *Graham v. Connor*, 490 U.S. 386 (1989), the force used was not reasonable under the circumstances.[1] To support that argument, Plaintiffs cite numerous cases, none of which have facts that are similar to this case and that are distinguishable from this case. First, in *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013), the plaintiff was "a bystander thirty-seven feet away without any perceptible connection to the underlying crime" and the defendant officer fired a taser at him without sufficient warning. Thus, the court ruled that a jury could find that the use of the taser was unreasonable and excessive under the circumstances. *Id.* Similarly, in *Nelson v. City of Davis*, 685 F.3d 867, 873-74, 878-79 (9th Cir. 2012), the plaintiff was part of a group of students who were being told by police to leave a party that was being broken up. Police officers began shooting pepperball projectiles at the group, one of which struck the plaintiff in the eye. *Id.* The court held that the plaintiff had not committed any crime, was not a threat to anyone's safety, and that firing the pepperball projectiles into a crowd in which they could hit someone in the face or eye was not reasonable under the circumstances. *Id.* The use of force in *Mattos v. Agarano*, 661 F.3d 433, 451 (9th Cir. 2011) was also a taser in dart-mode that was used on the victim in a domestic violence call who confronted officers after they arrived. Finally, in *Smith v. City of Hemet*, 394 F.3d 689, 694 (9th Cir. 2005), the subject force was several bites by a police K-9 and use

---

[1] Defendants note for the Court that, in their Response, Plaintiffs address the issue of clearly established law/qualified immunity before addressing whether the force allegedly used was reasonable. This is the opposite order of how courts typically address these issues. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (approving the two-prong approach in *Saucier*—first, whether the alleged facts constitute the violation of a constitutional right and second, whether that right was clearly established and, if not, then the officer is entitled to qualified immunity—but holding that the first prong could be skipped in a court's discretion). In their Reply, Defendants first address the issue of the reasonableness of the force, and then whether the right was clearly established and if qualified immunity applies.

2

of pepper spray, some of which were used after the plaintiff was already subdued. None of these cases demonstrate that Officer Turiano's alleged use of force was excessive.

In their Response, Plaintiffs do not address the cases cited by Defendants, wherein the Ninth Circuit held that use of an arm lock to control a suspect is objectively reasonable under the circumstances, even when the criminal conduct underlying the detention or arrest of an individual is not severe, if the individual has shown to pose a possible threat and even when the individual contends he or she only tried to shift into a less painful position. *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1096–97 (9th Cir. 2006); *see also Johnson v. County of Los Angeles,* 340 F.3d 787, 793 (9th Cir. 2003) (concluding that hard pulling and twisting to remove a suspect from a crashed getaway car was objectively reasonable even though Johnson asserted that the officer's conduct rendered him paraplegic); *Eberle v. City of Anaheim,* 901 F.2d 814, 819–20 (9th Cir.1990) (upholding a jury's verdict that a police officer's use of a finger hold to control a belligerent football fan was objectively reasonable).

Plaintiffs also grossly overstate the facts alleged in the Amended Complaint to support their claim of alleged excessive force by Officer Turiano. Plaintiffs claim in their Response that they alleged that Officer Turiano "snapped Gellos' arm in half" and cite paragraph 64 of the Amended Complaint. However, in fact, paragraph 64 states that "Defendants" used "force" that "snapped her arm in half" and earlier in paragraphs 34-37 Plaintiffs allege that it was Defendant Brunton and other security guards who broke Plaintiff Gellos' arm before she even had contact with Officer Turiano. Additionally, Plaintiffs' argument that she was not actively resisting is contradicted by the allegation in the Complaint that she "attempted to position her body" in a different way. (Doc. 29, ¶ 49). Plaintiffs have not demonstrated there are facts alleged in the Amended Complaint to show Officer Turiano used excessive force. Therefore, this claim should be dismissed.

3

### B. Officer Turiano is Entitled to Qualified Immunity from Plaintiff Gellos' Claim in Count V.

Even if the newly alleged facts in Plaintiffs' Response demonstrated excessive force by Officer Turiano, Plaintiffs have not met their burden to show that Officer Turiano violated Plaintiff Gellos' clearly established constitutional rights. Instead of pointing the Court to cases to support her claim that the kind of force used by Officer Turiano on Plaintiff Gellos was unconstitutional, Plaintiffs rely upon *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) and *Taylor v. Riojas*, 592 U.S. 7, 9 (2020), for the proposition that it was so obvious that the alleged force used by Officer Turiano was unconstitutional, there did not need to be a case on point for the right to be clearly established.

However, the force used in *Hope* and *Taylor* is vastly different than the force Plaintiffs allege Officer Turiano used here. In *Hope*, defendant prison guards handcuffed a shirtless prison inmate to a hitching post for seven hours in June without a bathroom break and one guard taunted him about his thirst. 536 U.S. at 730. The Supreme Court held, "Arguably, the violation was so obvious that our own Eighth Amendment cases gave respondents fair warning that their conduct violated the Constitution. Regardless, in light of binding Eleventh Circuit precedent, an Alabama Department of Corrections (ADOC) regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post, we readily conclude that the respondents' conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 741–42. Thus, in *Hope*, there was additional authority that put prison guards on notice that using a hitching post in the manner they did was unconstitutional—it was not simply "obvious." In *Taylor*, a prison inmate was confined for six days in "a pair of shockingly unsanitary cells"—one covered, nearly floor to ceiling, in "'massive amounts' of feces" and the second, a frigidly cold cell, equipped with only a clogged drain in the floor to dispose of bodily

4

waste. 592 U.S. at 7-8. The Supreme Court held that given the "particularly egregious facts of this case, any reasonable officer should have realized that [plaintiff's] conditions of confinement offended the constitution." *Id.* at 9. Officer Turiano's alleged use of force was not "particularly egregious" and would not have been obvious to every reasonable officer that it was excessive.

Plaintiffs' argument that a constitutional violation in this case should have been obvious also lacks merit because even in some of Plaintiffs' relied-upon cases, the courts found that the law was not clearly established. For example, in *Mattos*, the Ninth Circuit found that the officer's use of a taser in dart mode against a domestic violence victim was not clearly established because "[a]t the time, 'there was no Supreme Court decision or decision of our court addressing' the use of a taser in dart mode [and] none of the three existing federal court of appeals cases dealing with tasers found a constitutional violation. . . . Accordingly, we conclude that the officers here are entitled to qualified immunity." 661 F.3d at 452.

Plaintiffs have failed to meet their burden of pointing the Court to a case demonstrating that Plaintiff Gellos' right was clearly established and, therefore, Officer Turiano is entitled to qualified immunity for Count V of the Amended Complaint.

    **C.**    **Plaintiff Gellos Fails to State a Claim Against Officer Gates for Failure to Intervene in Alleged Violation of Her Constitutional Rights in Count VI.**

As set forth above, Plaintiffs have not sufficiently alleged that Officer Turiano used excessive force in violation of Plaintiff Gellos' Fourth Amendment rights. There is no obligation to intervene in the use of force that is reasonable under the circumstances. *See Harmon v. City of Pocatello*, 431 F. Supp. 3d 1135, 1159 (D. Idaho 2020), *aff'd*, 854 F. App'x 850 (9th Cir. 2021) (holding that when a claim for failure to intervene is based on an officer's alleged observation that excessive force was used on the suspect, the

5

claim fails when there is a finding that the first officer's use of force was not unreasonable). Because Plaintiffs have not sufficiently alleged that Officer Turiano violated Plaintiff Gellos' clearly established constitutional rights, Officer Gates did not either. For these reasons, Count VI should be dismissed for failure to state a claim upon which relief can be granted.

### D. Officer Gates is Entitled to Qualified Immunity from Plaintiff Gellos' Claim in Count VI.

As the Court already pointed out in its Order ruling on Defendants' prior Motion to Dismiss, "the law does not clearly establish when an officer must intervene." *Penaloza v. City of Rialto*, 836 F. App'x 547, 549–50 (9th Cir. 2020), *citing Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2020). (*See* Doc. 18, p. 6). Further, for an officer to be held liable for failure to intervene, there must have been a clearly established constitutional violation. *Cunningham*, 229 F.3d at 1289. If there was not, the claim must be dismissed. As set forth above, if Officer Turiano is entitled to qualified immunity from Plaintiff Gellos' excessive force claim, then Officer Gates is likewise entitled to qualified immunity for not intervening in that use of force.

Contrary to the Court's direction in its previous Order, Plaintiff has failed to meet her burden of pointing to a Ninth Circuit or Supreme Court cases demonstrating that Officer Gates had a clearly established duty to intervene under the circumstances at issue here—even given the "new" facts added by Plaintiffs in their Amended Complaint. Plaintiffs erroneously argue that by citing *Penaloza*, it is Defendants who have not demonstrated qualified immunity.[2] However, Plaintiffs have not cited any cases to the

---

[2]Plaintiffs argue that *Penaloza* involved a twenty-eight second encounter and, thus, is distinguishable from this case. However, Plaintiffs also concede that they did not "plead the duration of the incident" in their Amended Complaint to distinguish it and instead, only asserted that Officer Gates had "plenty of time." (Doc. 29, ¶ 59). Not only are Plaintiffs barred from inserting new facts not contained in their Complaint, Plaintiffs

Court to show a clearly established right. The only cases Plaintiffs cite in their Response on the issue of failure to intervene involve factual scenarios very different from the one at issue here. In *Penaloza*, the plaintiff alleged that an officer failed to intervene when his fellow officer allowed a police K-9 to bite Plaintiff. 836 F. App'x at 549–50. The court held that the only Ninth Circuit cases addressing a claim for failure to intervene had found that the law was not clearly established. *Id.* Likewise, in *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), as amended (Oct. 31, 2000), (the case referred to by the *Penaloza* court), the force used was shooting at robbery suspects in a vehicle. The court held that officers not present at the time of the shootings, and non-shooting officers who were present but had no "realistic opportunity" to intercede, were entitled to qualified immunity. Finally, in *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518 U.S. 81 (1996), the court did not address qualified immunity because it was the criminal case brought against the officers involving the beating of Rodney King. Therefore, Plaintiffs have failed to meet their burden to show that Plaintiff Gellos' rights were clearly established and Officer Gates is entitled to qualified immunity.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CITY IN COUNTS I AND IV OF THEIR AMENDED COMPLAINT AND PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AGAINST THE CITY.

#### A. Count I – Gross Negligence

Plaintiffs concede that they are only alleging a claim for gross negligence against the City. In support of their argument that they have alleged sufficient facts to state a claim for gross negligence, they claim that alleging that Officer Turiano "ignored"

---

miss the point of the *Penaloza* holding, Defendants' (and this Court's) reliance upon the case, which is the law does not establish *when* an officer must intervene. (Doc. 18, p. 6).

Plaintiff Gellos' cries of pain and did not allow her to reposition her body amounted to gross negligence. These alleged actions by Officer Turiano, however, are not "flagrant and evince[] a lawless and destructive spirit." *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App. 1991). At a minimum, they amount to simple negligence, but not gross negligence.

Further, Plaintiffs' argument that the holding of *Ryan v. Napier*, 245 Ariz. 54, 60–61, ¶¶ 20-22, 425 P.3d 230, 236–37 (2018), does not bar their claims for negligence makes no sense. They seemingly concede that they cannot pursue a claim for gross negligence for Officer Turiano's intentional use of force, but they argue that *Ryan* does not bar their claim that Officer Gates was grossly negligent in failing to stop the alleged force. In making that argument, Plaintiffs ignore the reasoning of the *Ryan* court, which held plaintiffs cannot pursue a negligence claim for the use of intentional force or even for the internal evaluation or decisions of officers that led to the use of intentional force, including whether to intervene in a fellow officer's use of force. *Id.* at ¶ 22. Plaintiffs' claim for gross negligence in the Amended Complaint is clearly based on the Officers' actions or failure to act as they made decisions about when and whether to use force and whether to intervene. Thus, this entire claim is legally barred and must be dismissed.

**B.    Count IV – Negligent Infliction of Emotional Distress**

Plaintiffs concede in their Response that Plaintiff Foster is the only one asserting a claim for negligent infliction of emotional distress and it is only being asserted against the City. However, they argue that the Amended Complaint sufficiently alleges facts to demonstrate that Plaintiff Foster was in the "zone of danger" and that her alleged emotional distress resulted in a physical manifestation. Neither of these arguments is supported by the factual allegations in the Amended Complaint.

Plaintiffs claim that they have pled that Plaintiff Foster was in the zone of danger simply because she was in the vicinity of Plaintiff Gellos when Officer Turiano allegedly used excessive force and Officer Gates allegedly failed to intervene. However, to allege that a plaintiff was in the "zone of danger," there must be factual allegations demonstrating that "the negligent defendant created an unreasonable risk of bodily harm" to the plaintiff. *See Keck v. Jackson*, 122 Ariz. 114, 116, 593 P.2d 668, 670 (1979). However, the paragraphs in the Amended Complaint that Plaintiffs point to do not show that Plaintiff Foster was in danger or at risk of bodily harm from the Officers in any way. Indeed, there are not any allegations that Plaintiff Foster could have been injured or that she felt she was in danger. The fact that she was in the vicinity of her mother is insufficient to demonstrate that she was in the "zone of danger."

Additionally, Plaintiffs have failed to demonstrate that Plaintiff Foster's alleged emotional distress resulted in some physical manifestation that was not transitory or inconsequential. *See Quinn v. Turner*, 155 Ariz. 225, 226, 745 P.2d 972, 973 (App. 1987) ("Physical impact to the plaintiff is not necessary, but the emotional distress must manifest itself in some physical way."); *DeStories v. City of Phoenix*, 154 Ariz. 604, 608 (App. 1987) (Arizona adheres to majority rule, under which "there can be no recovery for mental disturbance unless physical injury, illness or other physical consequence accompany it, or physical harm develops as a result of the plaintiff's emotional distress"); *Gau v. Smitty's Super Valu, Inc.*, 183 Ariz. 107, 109 (App. 1995) (child's "transitory nightmares and sleep disturbance" insufficient physical manifestation). Arizona courts have found that even plaintiffs who suffered physical impact from asbestos fibers entering their lungs could not sustain a claim for negligent infliction of emotional distress merely by presenting evidence of emotional distress manifesting as "headaches, acid indigestion, weeping, muscle spasms, depression and insomnia" in

conjunction with the "mental anguish" of knowing that they might suffer from future asbestos-related illness or even death. *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 379, 752 P.2d 28, 32 (App. 1987). The *Burns* court held that these were merely "transitory physical phenomena" and did not rise to the level of physical manifestation of emotional distress. *Id.*

The only cases in which Arizona courts have allowed a claim for negligent infliction of emotional distress to proceed without a physical manifestation of the emotional distress are when there was a triggering event that posed a meaningful physical threat to the plaintiff such as: (1) where a plaintiff was erroneously treated with a radioactive substance that significantly increased his risk of developing leukemia causing post-traumatic stress disorder after six months of treatment, were sufficient to support a claim for negligent infliction of emotional, *Monaco v. HealthPartners of S. Arizona*, 196 Ariz. 299, 301-03, ¶¶ 2, 8-12, 995 P.2d 735, 737-39 (App. 1999), and (2) when the plaintiff suffered minor physical injuries at the time of a car accident when he was struck by a drunk driver who died as a result of the collision and that resulted in continued emotional distress, *Ball v. Prentice*, 162 Ariz. 150, 151–52, 781 P.2d 628, 629–30 (App. 1989). Plaintiffs' allegations that Plaintiff Foster temporarily could not stand or walk and that she later experienced "weight loss, nightmares, and behavioral changes," are not sufficient physical harm for a negligent infliction of emotional distress claim. Therefore, Count IV of Plaintiffs' Amended Complaint fails as a matter of law and should be dismissed.

C.     **Plaintiffs' Punitive Damages Claim Against the City**

Plaintiffs concede in their Response that they cannot recover punitive damages against the City of Phoenix on their state law claims against it (Doc. 35, p. 13) and agree that their claim for punitive damages against the City should be dismissed.

## VI. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.

In their Response, Plaintiffs request that if the Court decides to grant Defendants' Motion to Dismiss in part or in full, they be granted yet another chance to amend their Complaint to state claims against Defendants. The Court should deny this request because Plaintiffs already had multiple opportunities to amend their Complaint (*see* Doc. 18, p. 12; Doc. 29), received direction from the Court's rulings on Defendants' first Motion to Dismiss, and still have not been able to state claims. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (holding that the factors courts should consider when determining whether to allow a party to amend include bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings). Indeed, "a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts . . . and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*, citing *Allen v. City of Beverly Hills,* 911 F.2d 367, 374 (9th Cir. 1990). Therefore, Plaintiffs should not be afforded yet another opportunity to amend.

Additionally, in making the request to amend, Plaintiffs have failed to comply with LRCiv 15.1(a), which requires, "A party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." Therefore, if the Court grants Defendants' Motion in part or in full, Plaintiffs' request for leave to amend should be denied.

## V. CONCLUSION

For the reasons set forth in their Motion to Dismiss and above, Defendants respectfully request that Plaintiffs' Amended Complaint be dismissed against them in its

entirety, with prejudice and without leave to amend. Specifically, the Officer Defendants respectfully request that the Court dismiss Plaintiffs' allegations against them on the basis that they are entitled to qualified immunity. Further, the City respectfully requests that the Court dismiss Plaintiffs' remaining claims, Count I and IV, against it in their entirety, as well as Plaintiffs' claim for punitive damages against the City, with prejudice and without further leave to amend.

RESPECTFULLY SUBMITTED this 30th day of April, 2025.

Office of the Phoenix City Attorney

By  *s/ Karen Stillwell*
  Karen Stillwell
  Assistant Chief Counsel
  *Attorneys for Defendants City of Phoenix,*
    *Officer Christopher Turiano, and Officer*
    *William Gates*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing was sent to the following CM/ECF registrants:

Sean A. Woods
Mills and Woods Law PLLC
5055 North 12st Street, Suite 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

By:  *s/ Jody C. Corbett*
KLS:jcc  4921-3174-9180 v.1.docx