1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9     Susan Gellos, et al.,                    No. CV-24-01529-PHX-GMS

10                    Plaintiffs,              **ORDER**

11    v.

12    City of Phoenix, et al.,

13                    Defendants.

14

15         Pending before the Court is Defendants Officer Christopher Turiano, Officer

16  William Gates, and City of Phoenix's (the "Phoenix Defendants"[1]) Motion to Dismiss the

17  First Amended Complaint. (Doc. 32). For the reasons below, the motion is granted.

18                                   **BACKGROUND**

19         On January 27, 2025, the Court granted in part and denied in part the Phoenix

20  Defendants' first Motion to Dismiss (Doc. 18). (*See* Doc. 27, *as amended by* Doc. 28).[2]

21  In their initial complaint, Plaintiffs—Susan Gellos and her daughter Taryn Foster—

22  brought a claim for excessive force, in violation of the Fourteenth Amendment and 42

23  U.S.C. § 1983, against the Phoenix Defendants, claiming that Officer Turiano's use of an

24  armlock to subdue Gellos—a concertgoer who was asked to leave the venue—coupled with

25  Officer Turiano's use of "even more force" when Gellos attempted to position her body to

26

27  [1]    Officer Turiano and Officer Gates (the "Officers") are both police officers with the
    Phoenix Police Department.
28  [2]    The factual background and legal standards and conclusions set forth in that
    Order—*Gellos v. City of Phoenix*, 2025 WL 307050 (D. Ariz. Jan. 27, 2025) (Doc. 28)—
    are incorporated here by reference.

1  relieve her initial pain, was objectively unreasonable and worsened injuries that Gellos had

2  previously suffered to her right arm. (Doc. 1 at 8-10, 15).  Plaintiffs also brought a § 1983

3  claim against Officer Gates for failure to intervene. (*Id.* at 16).  Finally, Plaintiffs brought

4  a host of state law claims against the Phoenix Defendants, Richard Brunton (a private

5  security guard at the concert venue), a number of unknown "persons, agents, servants,

6  employees, corporations and/or business entities," and the marital communities of the

7  individual defendants. (*Id.* at 7-8, 11-14).[3]

8      The Court dismissed Plaintiffs' § 1983 claims without prejudice, holding that

9  Officers Turiano and Gates were entitled to qualified immunity. (Doc. 28 at 3-6).  First,

10  regarding the claim of excessive force, the Court held that Plaintiffs failed to plead facts

11  demonstrating that Officer Turiano's use of force towards Gellos violated a "clearly

12  established" constitutional right. (*Id.* at 4-5).  Second, in dismissing the failure to intervene

13  claim against Officer Gates, the Court ruled that Plaintiffs failed to meet their burden of

14  identifying cases clearly establishing the law on when an officer has a "realistic opportunity

15  to intercede." (*Id.* at 5-6).

16      The Court, exercising supplemental jurisdiction over the remaining state law claims,

17  allowed the claims of gross negligence and negligent infliction of emotional distress

18  against the City of Phoenix to proceed, noting that the Phoenix Defendants did not assert

19  lack of plausibility. (*Id.* at 6-8).  Plaintiffs were granted leave to amend their complaint

20  within thirty days. (*Id.* at 7).  Plaintiffs timely filed their amended complaint on February

21  26, 2025. (Doc. 29).

22      In their amended complaint, Plaintiffs reassert the following five claims:

23      • Count I:  Gross negligence against the City of Phoenix;

24  _____
[3]    Plaintiffs brought state law claims of (1) gross negligence against the Phoenix
25  Defendants; (2) negligence against Brunton and other unidentified security guards; (3)
intentional infliction of emotional distress against all defendants; (4) negligent infliction of
26  emotional distress against all defendants; and (5) assault and battery against all defendants.
(Doc. 1 at 11-14).  Prior to oral argument on the Phoenix Defendant's first motion to
27  dismiss, held on January 17, 2025, the parties agreed to dismiss (1) the gross negligence
and negligent infliction of emotional distress claims against the Officers without prejudice;
28  (2) the intentional infliction of emotional distress claim against the Phoenix Defendants
with prejudice; and (3) the assault and battery claim against the Phoenix Defendants
without prejudice. (Doc. 28 at 1).

- 2 -

1

2

- Count II:  Negligence against Brunton and other unidentified security guards;

- Count III:  Negligent infliction of emotional distress against the City of Phoenix;

- Count V:[4]  Excessive force in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 against Officer Turiano; and

- Count VI:  Duty and failure to intervene against Officer Gates.

(*Id.*).  Plaintiffs include additional factual allegations regarding Officer Turiano's use of force, averring that he was aware that Gellos's arm was injured before he apprehended her, knew that any physical manipulation would cause Gellos excessive pain and suffering, and yet still put her in an armlock.  (*Id.* ¶¶ 40-44).  And, when Gellos began screaming and repositioned her body to relieve the pain in her arm, Officer Turiano, instead of backing off, responded with more force, resulting in additional injury to Gellos.  (*Id.* ¶¶ 45-50).  Finally, Plaintiffs newly allege that Officer Gates stood by and watched Officer Turiano manipulate Gellos's arm, and, despite Gellos's screams of pains, failed to intervene to prevent Officer Turiano's actions—even though Officer Gates had "plenty of time to do so" and "could have told Turiano that what he was doing was unnecessary, overbroad, and was the cause and creation of excessive force."  (*Id.* ¶¶ 55-60).

The Phoenix Defendants moved to dismiss the counts brought against them for failure to state a claim.  (Doc. 32).  They contend that qualified immunity still bars the federal claims brought against the Officers (Counts V and VI), and that Plaintiffs failed to sufficiently plead claims for gross negligence and negligent infliction of emotional distress against the City of Phoenix as a matter of law (Counts I and III).  (*Id.*).

**LEGAL STANDARD**

**A.    Failure to State a Claim**

The Court must dismiss an action where a plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[4]    Plaintiffs mislabel their fourth claim as "Count V" and their fifth claim as "Count VI."  (Doc. 29 at 10, 12).  The Court will still refer to the § 1983 claim against Officer Turiano as "Count V" and the § 1983 claim against Officer Gates as "Count VI."

1    face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

2    550 U.S. 544, 570 (2007)).  While the Court must "construe the pleadings in the light most

3    favorable to the nonmoving party," *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005),

4    a complaint may still be dismissed as a matter of law "for one of two reasons: (1) lack of a

5    cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson*

6    *v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Iqbal*, 556 U.S. at 678

7    ("A claim has facial plausibility when the plaintiff pleads factual content that allows the

8    court to draw the reasonable inference that the defendant is liable for the misconduct

9    alleged.").  The Court need not accept the legal conclusions contained in a complaint as

10    true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11    conclusory statements, do not suffice" as factual content.  *Iqbal*, 556 U.S. at 678 (citing

12    *Twombly*, 550 U.S. at 555).

13          **B.**    **Qualified Immunity**

14          Qualified immunity shields state actors "from liability for civil damages insofar as

15    their conduct does not violate clearly established statutory or constitutional rights of which

16    a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

17    "Because qualified immunity is an immunity from suit rather than a mere defense to

18    liability," immunity disputes should be resolved "at the earliest possible stage in litigation."

19    *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation modified).

20          Plaintiffs can clear the qualified immunity hurdle only if they demonstrate that (1)

21    the officer "violated a federal statutory or constitutional right" and (2) the unlawfulness of

22    the officer's conduct was "clearly established at the time" of the violation.  *District of*

23    *Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658,

24    664 (2012)); *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (plaintiff has burden of

25    proof to demonstrate that the right was clearly established).  The Court, in its discretion,

26    can "address the clearly established prong of the qualified immunity test first." *Shooter*, 4

27    F.4th at 961 (internal quotation marks and citations omitted); *Callahan*, 555 U.S. at 236.

28          A right is "clearly established" if, "at the time of the officer's conduct, the law was

1    sufficiently clear that *every* reasonable official would understand that what he is doing is

2    unlawful." *Wesby*, 583 U.S. at 63 (emphasis added) (internal quotation marks and citations

3    omitted).  While "a case directly on point" is not required, "existing precedent must have

4    placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563

5    U.S. 731, 741 (2011).  Indeed, a clearly established right must be "settled law." *Wesby*,

6    583 U.S. at 63 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).  "It is not enough

7    that the rule is *suggested* by then-existing precedent." *Id.* (emphasis added).  Instead, the

8    right must be dictated by either "controlling authority or a robust consensus of cases of

9    persuasive authority." *Id.* (internal quotation marks and citations omitted).

10          The clearly established right must be defined with specificity. *City of Escondido v.

11   Emmons*, 586 U.S. 38, 42 (2019) (reversing denial of qualified immunity at summary

12   judgment where the lower court only defined the clearly established right "at a high level

13   of generality").  Specificity is "especially important in the Fourth Amendment context"—

14   the Supreme Court "has recognized that it is sometimes difficult for an officer to determine

15   how the relevant legal doctrine, here excessive force, will apply to the factual situation the

16   officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation modified).

17          Thus, the inquiry for the Court at the pleading stage is to determine "whether the

18   complaint alleges sufficient facts, taken as true, to support the claim that the officials'

19   conduct violated clearly established constitutional rights of which a reasonable officer

20   would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d

21   1228, 1235 (9th Cir. 2018) (quoting *Mullenix*, 577 U.S. at 12).  If the complaint fails to

22   "contain[] even one allegation of a harmful act that would constitute a violation of a clearly

23   established right," then the complaint must be dismissed. *See id.* (citation omitted).

                                    **DISCUSSION**

I.      **Federal Claims (Counts V and VI)**

26          Both of Gellos's federal claims are barred by qualified immunity.  Gellos still has

27   not identified cases demonstrating that Officer Turiano and Officer Gates violated any

28

1  clearly established constitutional rights.  The Court will analyze each claim in turn.[5]

2           **A.    Officer Turiano is Still Entitled to Qualified Immunity on Count V.**

3        Gellos again fails to meet her burden in alleging sufficient facts to support her claim

4  that Officer Turiano violated her clearly established constitutional rights.

5        The Court accepts the following factual allegations involving Officer Turiano as

6  true:  Gellos, described as a "small senior citizen," attended a concert on March 9, 2023, at

7  the Footprint Center with Foster, her daughter.  (Doc. 29 ¶¶ 19, 62).  Before Plaintiffs found

8  their seats, Gellos verbally quarreled with another patron, who then told Footprint security

9  that Gellos and Foster were fighting with the patrons.  (*Id.* ¶¶ 20-22).  Footprint security

10  subsequently approached Plaintiffs and indicated that security had reason to believe they

11  were intoxicated.  (*Id.* ¶ 23).  After receiving assurance from Plaintiffs, Footprint security

12  escorted them to their seats.  (*Id.* ¶¶ 24-26).

13        Twenty minutes later while buying drinks, Gellos had a second interaction with the

14  same patron from earlier.  (*Id.* ¶¶ 28-29).  Fifteen minutes after the second interaction, a

15  Footprint employee asked Gellos to leave but stated that Foster could stay.  (*Id.* ¶ 30).

16  Plaintiffs remained calm but protested.  (*Id.* ¶¶ 31-32).  Footprint security then "grabbed

17  Gellos by all four limbs and forcefully and indelicately carried her out of the seating areas

18  of the arena."  (*Id.* ¶¶ 33-34).  Richard Brunton, a member of Footprint security, violently

19  swung Gellos and wrenched her arm, at which point Gellos began to feel extreme pain.

20  (*Id.* ¶¶ 35-36).  Gellos believed that Brunton had broken her arm.  (*Id.* ¶ 37).

21        Shortly thereafter, the Footprint security detail met with Officer Turiano and Officer

22  Gates.  (*Id.* ¶ 39).  Gellos was "dwarfed by the officers."  (*Id.* ¶ 63).  Gellos was "very clear

23  with" Officer Turiano—who had heard her cries of pain—that her arm was injured and that

24  movement to her arm was excruciating.  (*Id.* ¶¶ 40-43).  Gellos was then pushed into an

25  elevator by Brunton, who had her arm locked behind her.  (*Id.* ¶ 44).  In the elevator, Officer

26  Turiano put Gellos's right arm into an armlock, at which point Gellos began screaming.

27      [5]    Though the amended complaint alleges that "*Plaintiffs'* rights to freedom from
unreasonable seizures" were violated (Doc. 29 ¶ 107 (emphasis added)), Plaintiffs concede
28  that "Foster is not asserting any federal claims in this action."  (Doc. 35 at 3).  Thus, the
Court will analyze only whether Gellos has properly pleaded her federal claims.

(*Id.* ¶¶ 47-48).   As Gellos attempted to position her body to relieve the pain, Officer Turiano, "instead of backing off and allowing Gellos to position her body in a fashion to reduce the excruciating pain," responded with more force, worsening Gellos's injuries. (*Id.* ¶¶ 49-50).   Gellos "never intended to resist," and any physical contact with the Officers was unintentional and due to her pain. (*Id.* ¶¶ 66-68).   The totality of the force used against Gellos caused her right humerus to "snap." (*Id.* ¶¶ 64, 75, 114).

Considering these alleged facts, Officer Turiano is entitled to qualified immunity. Gellos, in her briefing, fails to define her clearly established right with specificity.  Gellos avers that Officer Turiano violated her "right to be free from the application of non-trivial force [by police] for engaging in mere passive resistance." (Doc. 35 at 4 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).   But Gellos defines her right at too high a level of generality.  *See Emmons*, 586 U.S. at 43.   The Supreme Court, when discussing the application of the exact case that Gellos cites, has instructed courts to "explain how that case law prohibited [the officer's] actions in this case" when evaluating the clearly-established prong of the qualified immunity test.  *Id.*  And though the Supreme Court has also explained that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (citations omitted), here, it is not obviously clear that *Gravelet-Blondin* applies to Officer Turiano's conduct.

In *Gravelet-Blondin*, the Ninth Circuit held that an officer who tased a plaintiff-bystander was not entitled to qualified immunity.  728 F.3d at 1089-90, 1092-96.  There, the plaintiff, who responded to noise coming from the direction of his neighbor's house, was standing "some thirty-seven feet" away from a group of officers who had subdued plaintiff's neighbor onto the ground.  *Id.* at 1090.  Though plaintiff "made no threatening gestures" towards the officers while taking "one or two steps back," the defendant-officer pointed a taser at him and yelled at him to "get back."  *Id.*  The defendant-officer then "began to warn [plaintiff] that he would be tased if he did not leave, but fired his taser before he had finished giving that warning."  *Id.*  Plaintiff was tased in "dart mode," which

1    caused him "excruciating pain, paralysis, and loss of muscle control." *Id.*  The Ninth

2    Circuit, after finding that the officer's use of force was unreasonable and excessive, held

3    that the "right to be free from the application of non-trivial force for engaging in passive

4    resistance was clearly established." *Id.* at 1092-94.

5         But the facts and subsequent legal holdings in *Gravelet-Blondin* do not place the

6    specific constitutional question in this case "beyond debate." *See al-Kidd*, 563 U.S. at 741.

7    First, there are substantial differences in methods of force employed by the officers.

8    *Gravelet-Blondin* involved the use of a taser in dart mode, whereas here, Gellos was placed

9    in an armlock by Officer Turiano. *See Schmitz v. Garrison*, 2025 WL 3280560, at *5 (D.

10   Or. Nov. 24, 2025) (holding that an officer's use of force, which consisted of punching

11   plaintiff and bringing him to the ground to handcuff him, was "too factually distinct for the

12   relatively general rule in *Gravelet-Blondin* to apply").  The cases relied upon by the

13   *Gravelet-Blondin* court in defining the clearly established rule also involved different

14   methods of force that are too factually distinct from the situation here. *See Nelson v. City

15   of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (pepper spray pellets); *Deorle v. Rutherford*,

16   272 F.3d 1272, 1282 (9th Cir. 2001) (shooting a lead-filled beanbag round); *Headwaters

17   Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002) (pepper spray).

18        Moreover, when determining whether the plaintiff's constitutional right was clearly

19   established, the *Gravelet-Blondin* court conducted an inquiry into whether it was clear that

20   using a taser in dart mode was considered a non-trivial use of force at the time of plaintiff's

21   injury. 728 F.3d at 1094-96.  But here, in contrast, Gellos offers no line of cases suggesting

22   that using an armlock to subdue a patron being removed from a venue was clearly

23   established as a non-trivial use of force in 2023.  In fact, the body of case law from the

24   Ninth Circuit might suggest otherwise. *See Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73

25   F.4th 678, 684 n.2, 691 (9th Cir. 2023) (noting that "a twist-lock"—"a type of control hold

26   which uses pain to gain control"—"is one of the least intrusive control holds available");

27   *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1096-97 (9th Cir. 2006) (use of

28   a control hold to secure plaintiff prior to arrest was objectively reasonable and observing

1    that the Ninth Circuit has "held more aggressive police conduct than [the officer's]

2    objectively reasonable, even where the conduct resulted in serious physical injury");

3    *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (holding that use of force

4    consisting only of physical pressure administered on plaintiffs' limbs in increasing degrees,

5    resulting in pain, "was less significant than most claims of force"); *Eberle v. City of*

6    *Anaheim*, 901 F.2d 814, 815, 820 (9th Cir. 1990) (application of finger-hold to move

7    patron, reported as "being belligerent" by stadium staff, from stadium seating to a safe area

8    was reasonable); *see also Donovan v. Phillips*, 685 F. App'x 611, 612-13 (9th Cir. 2017)

9    (unpublished) (describing an officer's application of a control hold—which included

10   gripping plaintiff's wrist, pulling her arm downward, and causing her to roll onto the

11   ground—as a use of "minimal force").  Thus, it cannot be said that *every* reasonable officer

12   would have understood that placing Gellos in an armlock when removing her from the

13   Footprint Center was unlawful.  *See Wesby*, 583 U.S. at 63.

14        Next, there are notable differences in the circumstances leading up to the use of

15   force.  Here, in contrast with *Gravelet-Blondin*, Gellos was not a mere bystander who "was

16   perfectly passive, engaged in no resistance, and did nothing that could be deemed

17   particularly bellicose."  *See* 728 F.3d at 1092 (internal quotation marks omitted).  Instead,

18   Gellos had been confronted twice by Footprint security due to reports about intoxication

19   and fighting (Doc. 29 ¶¶ 20-30), protested after being asked by Footprint security to leave

20   the arena (*id.* ¶¶ 31-32), and was forcibly removed from her seat by Footprint security—

21   and suffered initial injury—*prior* to Officer Turiano's involvement (*id.* ¶¶ 33-36).  *Cf. Rice*

22   *v. Morehouse*, 989 F.3d 1112, 1117, 1127 (9th Cir. 2021) (relying on *Gravelet-Blondin* and

23   other Ninth Circuit case law to hold that a plaintiff who was perfectly passive, engaged in

24   no resistance, and did nothing that could be deemed particularly bellicose—yet was still

25   removed from his vehicle, forcibly thrown down to the ground, and repeatedly struck,

26   kneed, and had his arms and shoulders wrenched and his fingers twisted—could establish

27   that the officers violated his clearly established right to be free from the application of non-

28   trivial force for engaging in mere passive resistance).  Furthermore, even though Gellos

- 9 -

1  did not resist when she was placed in an armlock, Officer Turiano was not on clear notice

2  that his decision to employ more force in response to Gellos repositioning her body to

3  relieve her pain was unlawful.  *See Tatum*, 441 F.3d at 1097 (9th Cir. 2006) ("Even

4  accepting [the] contention that [suspect] sought to escape [the officer's] grasp to shift into

5  a less painful position, [suspect] still resisted arrest, which justified [the officer's]

6  continued application of the control hold."); *Arpin v. Santa Clara Valley Transp. Agency*,

7  261 F.3d 912, 922 (9th Cir. 2001) (granting qualified immunity where plaintiff "stiffened

8  her arm and attempted to pull it away" while she was being handcuffed, "which was

9  impermissible regardless of whether [the officer] had probable cause to arrest her").

10         And finally, Gellos does not point to case law clearly establishing that Officer

11  Turiano's decision to employ an armlock, despite his knowledge that Gellos was in pain

12  prior to his use of force, was unlawful.  *See, e.g.*, *Schmitz*, 2025 WL 3280560, at *5

13  (granting qualified immunity even where plaintiff informed officers that "he was not able

14  to put his hands behind his back because of a prior shoulder injury"); *Malek v. Green*, 2017

15  WL 4284117, at *18 (N.D. Cal. Sept. 27, 2017) (granting qualified immunity where

16  plaintiff did not cite any "[r]elevant authority" discussing "whether it is unreasonable for

17  an officer to continue handcuffing once the suspect has complained of pain from a pre-

18  existing injury").  And though Gellos alleges that Officer Turiano's decision to employ an

19  armlock was "clearly unnecessary" (Doc. 29 ¶¶ 45, 53), such a legal conclusion does not

20  relieve Gellos of her burden to identify "settled law" demonstrating that Officer Turiano's

21  conduct was unlawful.  *See Wesby*, 583 U.S. at 63.

22         Accordingly, Gellos has failed to meet her "burden of pointing to prior case law that

23  articulates a constitutional rule *specific enough* to alert these officers *in this case* that their

24  particular conduct was unlawful."  *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir.

25  2022) (emphasis added).  As such, the Court need not evaluate the first prong of the

26  qualified immunity analysis—whether Officer Turiano's conduct constituted excessive

27  force.  The Court will dismiss Count V with prejudice and deny Gellos leave to amend the

28  claim.  Gellos has not demonstrated that she can plead any additional facts to overcome

Officer Turiano's qualified immunity. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (citation modified)).

        **B.**       **The Failure to Intervene Claim Against Officer Gates (Count VI) Fails Because it is Predicated on Officer Turiano's Conduct.**

Gellos's claim against Officer Gates for failure to intervene is also unsuccessful.

The Court accepts the following factual allegations involving Officer Gates as true: Officer Gates, like Officer Turiano, heard Gellos's cries of pain about her arm as she was being forcefully escorted out of the arena by Footprint security. (Doc. 29 ¶¶ 40-42). And while Officer Turiano placed Gellos in an armlock in the elevator, Officer Gates stood by and allowed the use of force to continue, even though he had "plenty of time" to tell Officer Turiano "that what he was doing was unnecessary, overbroad, and was the cause and creation of excessive force." (*Id.* ¶¶ 55-60).

But while Gellos correctly identifies that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen" (Doc. 35 at 7 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)), such a duty is predicated on an underlying constitutional violation. *See Tobias v. Arteaga*, 996 F.3d 571, 583-84 (9th Cir. 2021); *Green v. City & County of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001); *see also Shepard v. Perez*, 609 F. App'x 942, 942-43 (9th Cir. 2015) (unpublished) ("A failure-to-intervene claim requires an underlying constitutional violation.").

Here, the Court has held that Officer Turiano's conduct did not violate Gellos's clearly established constitutional rights. Thus, there is no conduct that any failure to intervene claim against Officer Gates could be predicated on. Therefore, because the Court has dismissed the excessive force claim against Officer Turiano, Gellos does not have a viable claim for failure to intervene against Officer Gates. Count VI, like Count V, is dismissed with prejudice. *Telesaurus VPC*, 623 F.3d at 1003.

## II.    State Law Claims (Counts I, II, and III)

Because Plaintiffs have again failed to overcome dismissal of their federal claims based on qualified immunity, the Court has now, with prejudice, "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court thus declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims: Counts I, II, and III. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). Plaintiffs, if they so choose, should refile these claims in state court.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that the Phoenix Defendants' Motion to Dismiss (Doc. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that Count V and Count VI are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Count I, Count II, and Count III are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action.

Dated this 30th day of January, 2026.

_____
G. Murray Snow
Senior United States District Judge